IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY MARSHALL,

     Plaintiff,   No. CIV S-04-1657 RRB EFB P

  vs.

DEPUTY CASTRO, et al.,

     Defendants.   <u>FINDINGS AND RECOMMENDATIONS</u>

                                /

     Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. His September 10, 2004, second amended complaint alleges that defendants injured him by using excessive force while booking him into jail and then denied him medical treatment for his injuries. The matter is currently before the court on motions for summary judgment filed by defendants Molloy and Castro on September 28 and 29, 2006, respectively. For the reasons set forth below, both motions must be denied.

////
////
////
////
////

1

## I. Facts

On July 19, 2004, plaintiff was arrested and brought to the Solano County Jail. Plaintiff's Verified Second Amended Complaint ("Sec. Am. Compl."), ¶ 27. Defendant Castro, a correctional officer,[1] was on duty, and his co-defendant Molloy was the booking sergeant on duty that day. Def. Castro's Mot. for Summ. J. ("Castro Mot."), Attach. 11, Decl. of Castro ("Castro Decl."), ¶ 1; Def. Molloy's Mot. for Summ. J. ("Molloy Mot."), Attach. 12, Decl. of Molloy ("Molloy Decl."), ¶ 2. Defendant Castro served under the Solano County Sheriff. *Id.* He conducted the pre-booking intake process on plaintiff. Sec. Am. Compl., ¶ 27; Castro Decl., ¶ 1; Molloy Decl., ¶ 3. Molloy also served under the Solano County Sheriff and held the rank of Sergeant. Molloy Decl., ¶ 1. He had no policymaking authority in his position. *Id.*

During the jail intake processing of plaintiff, defendant Molloy was sitting at his desk in the receiving area. He heard loud voices coming from the direction of Castro and plaintiff and he went over to see what was happening. Molloy Decl., ¶ 3. Molloy states that he did not know what plaintiff was upset about and attempted to calm him. Molloy Decl., ¶ 4; Castro Decl., ¶ 2. Molloy then began walking back to his desk. Molloy Decl., ¶ 4.[2]

Castro then took plaintiff into the nurse's office to complete a medical screening portion of the intake process. During the process, defendants perceived plaintiff to be uncooperative and continuing to loudly complain. They reported that he was repeatedly protesting in an excited and agitated manner. Castro Decl., ¶¶ 2, 3; Molloy Decl., ¶ 4.

It is apparent that plaintiff's medical condition renders his behavior difficult to manage. His medical records from the jail for the period immediately following his arrest and for the five months thereafter show a history of mental illness, including bipolar disorder. Castro Mot. &

---

[1] Although the complaint refers to Castro as a "deputy," at the times relevant to this case he held the rank and title of "correctional officer." Def. Castro's Mot. for Summ. J., Attach 11, Decl. of Castro ("Castro Decl."), ¶ 1.

[2] Molloy was not present when plaintiff was eventually patted down, as described below, a key event in this case. Molloy Decl., ¶ 5; Pl.'s Dep., at 75:11-17.

Molloy Mot., Attachs. 14, Decl. of Norris, Ex. A, at 24-25.  Notes made by medical staff indicate that plaintiff was manic and logorrheic, claimed to possess supernatural powers and could predict events and look into others' minds.  *Id.*

While waiting to be seen by the intake nurse, Castro continued with the screening process of plaintiff, which apparently involves asking a series of questions.  Sec. Am. Compl., ¶ 27.  Plaintiff states that Castro became frustrated during this process and chose to stop the questioning and begin the custodial part of the job.  *Id.*  Plaintiff claims that he delayed in answering one of Castro's questions and for that reason Castro considered him to be "combative."  Castro Mot. & Molloy Mot., Attachs. 8, Decl. of Stringer, Ex. A, Deposition of plaintiff ("Pl.'s Dep."), at 41:6-42:9, 45:7-20.  Castro discontinued the medical screening, Sec. Am. Compl., ¶ 27; Castro Decl., ¶ 3; Pl.'s Dep., at 41:12-42:9, and commenced the custodial portion of the intake process.  Sec. Am. Compl., ¶ 27; Castro Decl., ¶ 4.  He had plaintiff stand with his face to the wall in the hallway, with the intention of patting him down prior to removing his belt and checking his pockets.  Castro Decl., ¶ 4; Pl.'s Dep., at 53:10–54:14.

What happened next is disputed.  Plaintiff claims that Castro grabbed him by one of his arms and "pointed" his body up against a cement wall.  Sec. Am. Compl., ¶ 27.  He says that Castro then removed plaintiff's belt and searched his front pockets as he stood facing the wall with his hands cuffed behind his back.  *Id.*  According to plaintiff, Castro then searched his rear pockets, and without any warning, justification, or provocation, slammed his head into the cement wall, causing dizziness, severe pain, and swelling to the left side of his face.  *Id.*

Castro disputes this.  He states that he did not push or in any way "slam" plaintiff's head against the wall.  Castro Decl., ¶ 4.  He states that if plaintiff's head made contact with the wall during this pat-down, Castro did not see or notice it.  *Id.*  According to Castro, plaintiff continued to loudly protest and Castro grew concerned that plaintiff might become violent.  For that reason, Castro decided to move plaintiff to a holding cell to complete the custodial intake process.  Castro Decl., ¶ 5.  Castro then walked plaintiff to the holding cell, accompanied by his

3

partner and by Molloy. Sec. Am. Compl., ¶ 27; Castro Decl., ¶ 5; Molloy Decl., ¶ 6.

Molloy testified that after he returned to his desk following the initial loud voices from the receiving area, he next noticed Castro escorting plaintiff to the holding cell. Molloy Decl., ¶ 6. Because he was the supervisor on duty and plaintiff had previously been "agitated," Molloy followed them to the cell. Molloy Decl., ¶ 6; Castro Decl., ¶ 5. He said plaintiff was escorted to the "cold cell" where Molloy stood less than three feet behind plaintiff. Sec. Am. Compl., ¶ 27. Once in the holding cell, Castro and his partner placed plaintiff with his face towards the wall in an attempt to complete the intake search process. Molloy Decl., ¶ 7; Castro Decl., ¶ 6. Plaintiff was again ordered to face a cement wall with his hands still cuffed behind his back. Sec. Am. Compl., ¶ 27. Plaintiff claims that at this point he was so close to the wall that his nose was nearly touching it. Pl.'s Dep., at 60:2-13. He said that Castro asked for assistance from the others in removing plaintiff's shoes and socks. *Id.*

There is no dispute that the officers then lifted plaintiff's leg and removed one of his shoes. Molloy Decl., ¶ 7; Castro Decl., ¶ 6; Pl.'s Dep., at 61:1– 62:1. However, contrary to plaintiff's allegation, defendants claim that while the officers were attempting to remove plaintiff's other shoe, he began to fall towards the floor. Molloy Decl., ¶ 7; Castro Decl., ¶ 6; Pl.'s Dep., at 61:1– 62:1. Neither Castro nor Molloy saw plaintiff's head contact the wall as plaintiff began to fall. Castro Decl., ¶ 6; Molloy Decl., ¶ 7. Castro states that he did not push or in any fashion "slam" plaintiff's head against the wall during this procedure. Castro Decl., ¶ 6; Molloy Decl., ¶ 7. Castro claims that he and his partner grabbed plaintiff's shoulder as he was falling, and they "guided" him to the floor. Molloy Decl., ¶ 7; Castro Decl., ¶6; Pl.'s Dep., at 61:10-23.

Plaintiff states, however, that after his shoes and socks were removed, Castro slammed plaintiff's face into the wall again. Pl.'s Dep., at 60:2-13. This time, according to plaintiff, his vision went black and there was a ringing in his ears. Sec. Am. Compl., ¶ 27. Castro then, says plaintiff, pulled plaintiff away from the wall, and while other officers pulled plaintiff's legs out

4

from under him, Castro placed his hand on plaintiff's back and slammed him to the cement ground face first, causing him to temporarily lose consciousness. Sec. Am. Compl., ¶ 27; Pl.'s Dep., at 60:5-62:13. Defendants claim that Castro and his partner placed plaintiff in a prone position on the floor to finish removing his shoes and socks. Molloy Decl., ¶ 7; Castro Decl., ¶ 6; Pl.'s Dep., at 61:24-62:13. Plaintiff states that at that time, Castro placed his boot on plaintiff's neck and grinded it against his neck, breaking the skin and causing bruising and swelling. *Id.* He also claims that Castro then "pounced down" on plaintiff's right shoulder with all his weight, causing plaintiff to bleed through his shirt. *Id.* He said that he asked defendant Molloy to stop Castro and asked him why he was just standing there doing nothing and that Molloy simply laughed. *Id.*

Plaintiff continued to yell throughout the procedure. Molloy Decl., ¶ 7. Castro testified that during the entire intake process he never understood why plaintiff was protesting and refusing to cooperate. Castro Decl., ¶2. Castro indicated that he did not know whether plaintiff's protests would escalate to violence. Castro Decl., ¶¶ 2 & 5. Molloy testified that throughout the process he observed the events from the doorway, approximately fifteen to twenty feet away. Molloy Decl., ¶ 6. He observed that plaintiff was yelling and uncooperative throughout the procedure. He did not see plaintiff's head make contact with the wall. Once plaintiff's shoes and socks were removed, Molloy left the room, believing the officers had matters under control. The entire exchange from the moment plaintiff was placed against the wall in the holding cell, until the moment his shoes and socks were removed, took no more than two to three minutes. Molloy Decl., ¶ 8.

Plaintiff does not allege that Molloy inflicted any physical harm on him. Sec. Am. Compl., ¶ 27; Pl.'s Dep., at 72:21–73:7, 81:17– 25. Rather, his sole complaint against Molloy was that Molloy was a supervisor who was present and observed the events in the holding cell, but failed to intervene. Sec. Am. Compl., ¶ 27; Pl.'s Dep., at 72:21–73:22, 81:17-25.

////

Plaintiff alleges that he asked for medical assistance, which was denied. Sec. Am. Compl., ¶ 27. He claims that he sustained injuries to his right knee, back, and neck, *id.*, and that the right side of his face was "swollen unusually" and he had cuts and scratches on his neck. Pl.'s Dep., at 44:9-24. He expressed some confusion as to whether he was facing to the right or left and whether he sustained injury to his right or left side of his face. *Id*., at 75:21-76:6. He alleges that he requested to see medical staff for "facial swelling," and to have his neck and back examined. Sec. Am. Compl., ¶ 27.

In contrast, defendants claim that plaintiff had no visible injuries and neither Molloy nor Castro perceived that plaintiff had any urgent need for medical attention at that time. Castro Decl., ¶ 9. They note that after the intake process was complete plaintiff was taken to have his booking photo taken, and assert that the photo shows no facial injuries.

Plaintiff filled out two Correctional Health Care Services Request forms within two to three days of July 19, 2004. One of these forms is dated July 21, 2004, and the other July 22, 2004. Neither form mentions an assault by jail staff. Castro Mot. & Molloy Mot., Attachs. 14, Norris Decl., Ex. A. However, the one dated July 22 references "neck and back pain," and the other, dated July 23, specifically notes "swollen neck." *Id*. Medical staff notes also indicate that plaintiff complained of being "pushed up against a cement wall" and that he had a bruise on his neck. *Id*. at 22, 27. On physical examination on July 26, 2004, plaintiff complained of right shoulder and neck pain, but there were no physical signs or symptoms supporting these complaints. *Id.* An x-ray of plaintiff's right knee was normal. *Id.*

Plaintiff filed a tort claim with Solano County on or about September 3, 2004. Defs.' Req. for Jud. Ntc., Ex. A, Plaintiff's Solano County Claim for Damages ("Tort Claim"). In that tort claim, when asked to "[s]pecify the particular act or omission and circumstances [he] believe[d] caused injury, damage or loss," plaintiff described physical harm stemming from his face allegedly being "slammed" against a cement wall in the holding cell, and resulting from the search and restraint that took place on the holding cell floor. Tort Claim. The tort claim

contains no mention of any "head-slamming" in the hallway, nor does it mention any requests for medical attention. *Id*. It also did not identify any act or omission on the part of Molloy or any request for medical attention. *Id*.

**II.    Standards**

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert.*

*denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[3]  Two steps are necessary.  First, according to the substantive law, the court must determine what facts are material.  Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial.  *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631.  There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts

---

[3] On January 20, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

8

are thereby rendered immaterial. *Celotex*, 477 U.S. at 323. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[4] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendants acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the

---

[4] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

9

evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

**III.     Analysis**

   **A.  Excessive Force**

The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *see Gibson v. County of Washoe, Nev*., 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment . . . . *Graham* therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit.") (citations omitted). The factors a court should consider in resolving a due process claim alleging excessive force are:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain and restore discipline. *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir.1990).

To determine whether particular restrictions and conditions accompanying pretrial detention amount to punishment, the court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *See Bell*, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. *See id.* If a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, the court may infer that the purpose of the action is punishment. *Id.* at 539.

Defendants' motion argues that plaintiff has not raised a triable issue of fact as to whether defendants used force at all. They submit a copy of plaintiff's booking photo together with a declaration that the photo was taken after the use of force that plaintiff claims to have

10

taken place. Castro Mot., Attach 12, Molloy Mot., Attach. 10, Decl. of Jones, Ex. A, Booking photo ("Photo"); Molloy Decl., ¶ 11; Castro Decl., ¶8. Defendants claim that the booking photograph shows no facial injuries. *Id.* However, the quality of the copy is so poor that it is impossible for the court to discern any evidence from the photo either in support of defendants' claims or plaintiff's.[5] *Id.* Defendant Castro asserts that he "did not push or 'slam' his head into the wall . . . did not 'grind' [his] boot onto his neck . . . [and] did not 'pounce' on him." Castro Decl., ¶ 6. Defendant Molloy claims that "at no time did I witness [Castro] exert any fore to restrain [plaintiff]." Molloy Decl., ¶ 10. In support of their claims, defendants argue that there is no evidence showing that they used any force or that plaintiff was injured as a result of their actions.     Plaintiff contends, under penalty of perjury in his verified complaint, that they did use force and that there was no provocation for its use. Sec. Am. Compl., ¶ 27. He claims that defendant Castro slammed his head into the wall, slammed his body to the ground and his face into the floor, ground his boot into plaintiff's neck, and then denied medical treatment. *Id.* Clearly, there is a dispute. The question is whether plaintiff has met his burden under *Celotex* to establish through evidence sufficient to meet his burden of proof at trial that the dispute here is genuine. 477 U.S. at 323.

The statements by these two defendants and by plaintiff, each percipient witnesses to the disputed events, conflicts. Viewing the evidence in the light most favorable to plaintiff, the court finds that genuine issues of material fact remain. Plaintiff has claimed, under oath, that Castro slammed his head into the wall and, while plaintiff was on the floor, placed his boot on plaintiff's neck and grinded it against his neck, and then pounced on plaintiff's shoulder. He has also claimed, under oath, that he pleaded with Molloy to stop Castro and asked Molloy why he

---

[5] The copy of the booking photo defendants submitted is overly dark and wholly obscured by poor print quality. The quality is so poor that the court is unable to discern any of plaintiff's features let alone whether the photo does or does not show evidence of injury. Whether the original or a photographic duplicate would provide useful evidence is unknown. Neither was submitted in support of this motion. To urge the court to grant judgment on the faith of such "evidence" is an affront to the court.

was just standing there doing nothing and that Molloy simply laughed. Defendants, of course, deny these allegations entirely. But if plaintiff's testimony is believed by a jury he may be entitled to prevail on his claim.

Defendants' testimony may very well prove to be more credible for the reasons defendants argue. There does not appear to be physical evidence to corroborate plaintiff's version of the events, but his credibility, like that of the defendants, is to be determined by the trier of fact at trial and not on the papers in the context of this summary judgment motion. A jury will be entitled to weigh the defendants' credibility arguments, including the strength or weakness of plaintiff's testimony in light of all of the other evidence, including the evidence that plaintiff was behaving in a loud and combative manner, and that he suffers from mental illness. A reasonable jury could find that plaintiff's version of the events is not credible. Likewise, it could also draw inferences from these facts and find that defendants used force amounting to punishment out of frustration over plaintiff's disruptive and combative behavior. *See Bell*, 441 U.S. at 538. On this motion the court is required to view the evidence in the light most favorable to plaintiff and to draw all reasonable inferences in plaintiff's favor. Plainly, there is a triable issue of fact over what happened and defendants are not entitled to summary judgment as a matter of law on the question of whether Castro used excessive force to control the plaintiff. *Celotex*, 477 U.S. at 324.

### B. Deliberate Indifference to a Serious Medical Need

A pre-trial detainee's claim for deliberate indifference to medical needs derives from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). However, the same substantive standard applies. *Wolfish*, 441 U.S. at 535. A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled*

*on other grounds sub. nom*, *WMX Technologies, Inc v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Examples of indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain. *Id*. at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id*.

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant that results in harm. *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Nor must plaintiff demonstrate that the defendants' actions were egregious. *McGuckin*, 974 F.2d at 1060, 1061 (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant injury is evident")). Nevertheless, the existence of serious harm tends to support an inmate's deliberate indifference claims. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin*, 974 F.2d at 1060).

////

Once the prerequisites are met, it is for the factfinder to determine whether the defendants were deliberately indifferent. Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. *See McGuckin*, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim); *Compare Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (jury could find deliberate indifference where officials denied showers and medical attention to inmates who had been exposed to pepper-spray); and *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (summary judgment should not have been granted to defendants where plaintiff presented evidence that prison officials failed and refused to follow doctor's orders for a liquid diet for plaintiff whose mouth had been wired shut to treat a broken jaw); *with Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff; claim that doctor failed to conduct a differential diagnosis did not amount to more than negligence and claim that doctor failed to employ emergency treatment was conclusory); *Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002) (plaintiffs could not prove Eighth Amendment violation in class action because they "have not demonstrated that delays occurred to patients with [dental] problems so severe that delays would cause significant harm and that defendants should have known this to be the case").

A plaintiff need not prove a complete failure to treat. Deliberate indifference may be shown where access to medical staff is meaningless such as where the staff is not competent and does not render competent care. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir.1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination prescribed contraindicated sedatives).

Here, the question is whether plaintiff's sworn statements, if believed, establish deliberate indifference to a serious medical need such that he suffered "unnecessary and wanton infliction of pain." *See McGuckin,* 974 F.2d 1050, (citing *Estelle,* 429 U.S. at 104). He claims to have sustained injuries that were so severe that they caused bleeding, bruising, and swelling to various parts of his body. Sec. Am. Compl., ¶ 27. Those allegations are, as noted above, disputed. But the dispute over whether the plaintiff was handled in the manner he suggests simply underscores the dispute here. If his face was smashed into the wall, and if a boot was ground into his neck, he may have sustained injuries warranting medical attention. The evidence shows that the earliest he received medical care was on July 26, 2004, seven days later. Norris Decl., Attachs. That same evidence also shows that plaintiff suffered from a variety of ailments for which medical attention may have been warranted, including scleroderma and bipolar disorder. *Id.* A jury could find that defendants purposefully acted or failed to act and resulting harm therefrom. *See McGuckin*, 974 F.2d at 1060; *Shapley,* 766 F.2d at 407. As discussed above, a jury might find defendants' testimony more credible, but it is for the trier of fact to weigh credibility. There plainly is a triable issue of fact on this issue. Accordingly, defendants are not entitled to summary judgment as a matter of law on this question. *Celotex*, 477 U.S. at 324.

**C. Respondeat Superior**

To state a claim against a supervisor who did not personally inflict the injury alleged, plaintiff must allege the supervisor (1) caused others to act, or knowingly refused to stop them from acting, knowing or having reasonable cause to know they would inflict injury; (2) approved such conduct and injury after the fact; or (3) so failed to train or control subordinates to avoid such injury as to demonstrate reckless or callous indifference to constitutional injury. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also*, *Jones v. Williams*, 297 F.3d 930, 937 & fn. 4

15

(9th Cir. 2002). Plaintiff has the burden of proving these elements to his claim.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10-11 (9th Cir.1995); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir.1996), *amended*, 135 F.3d 1318 (9th Cir.1998) (treating allegations in prisoner's amended complaint as opposing affidavit). Here, plaintiff's complaint was signed under penalty of perjury and on summary judgment, may serve as a declaration in opposition to the motion to the extent the passages relied on are based on personal knowledge and are otherwise admissible testimony. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999) (citing *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors, Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987)).

Plaintiff contends that defendant Molloy should be held liable for Castro's alleged use of excessive force because Molloy ratified Castro's conduct by failing to intervene. Plaintiff asserts that he appealed to Molloy to intervene in Castro's alleged use of excessive force and that Molloy merely laughed. Sec. Am. Compl., ¶ 27. Molloy claims that he followed Castro and plaintiff to the holding cell, Molloy Decl., ¶ 6, but that he observed nothing amounting to a use of force. Molloy Decl., ¶¶ 7, 10. Although "[o]rdinarily, ratification is a question for the jury," *Christie v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999), to survive summary judgment, plaintiff must demonstrate that there is a genuine issue of material fact regarding whether ratification occurred.

First, there is a genuine dispute over whether Castro used excessive force. Second, there is a genuine factual dispute over whether Molloy ratified that excess by "knowingly refus[ing] to stop [Castro] from acting, knowing or having reasonable cause to know [Castro] would inflict injury" or "fail[ing] to train or control subordinates to avoid such injury as to demonstrate reckless or callous indifference to constitutional injury." *Redman,* 942 F.2d at 1446; *Taylor,* 880 F.2d at 1045; *Hansen,* 885 F.2d at 646; *Johnson,* 588 F.2d at 743; *see also Jones,* 297 F.3d at

16

1  937 & fn. 4.  Accordingly, the court finds that defendant Molloy's respondeat superior defense
2  fails and he is not entitled to summary judgment.

### D. Qualified Immunity

Defendants argue that even if there was a violation of plaintiff's constitutional rights, the individual defendants are protected by qualified immunity.  Qualified immunity shields state actors from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).  "[T]he qualified immunity recognized in Harlow acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt*, 504 U.S. at 168.  The Supreme Court does not "draw a distinction for purposes of immunity law between suits brought against state officials under [42 USC] § 1983 and suits brought directly under the Constitution [via *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ] against federal officials." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

The analysis for qualified immunity entails three steps.  First, the court must determine whether the facts, taken in light most favorable to the party asserting the injury, show a violation of the plaintiff's statutory or constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court finds a material factual dispute whether a constitutional violation has occurred, then the court determines whether the right infringed was clearly established at the time of the alleged violation.  *Wilson v. Layne*, 526 U.S. 603 (1999).  Finally, the court assesses whether it would be clear to a reasonable person in the defendant's position that its conduct was unlawful in the situation it confronted.  *Saucier*, 533 U.S. at 202, 205.  *See also Frederick v. Morse*, 439 F.3d 1114, 1123 (9th Cir. 2006) (characterizing this final inquiry as a discrete third step in the analysis).  "This is not to say that an official action is protected by qualified immunity unless the

17

very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted). For excessive force claims, courts first inquire into the objective reasonableness of the officer's belief in the necessity of his actions, and second, inquire into the objective reasonableness of the officer's belief in the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003); *see also Watts v. McKinney*, 394 F.3d 710, 713 (9th Cir. 2005) (stating, in the context of excessive force, that "[t]he Supreme Court did not need to create a catalogue of all the acts by which cruel and sadistic purpose to harm another would be manifest"). Defendants carry the burden of proving their conduct was reasonable under these standards.

The qualified immunity analysis is thus conceptually distinct from the excessive force constitutional analysis. *See Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir.2003). That is, an officer may violate an inmate's constitutional right, but still be entitled to qualified immunity if he can show that a reasonable officer in his position would have believed his response was a good faith effort to restore discipline. *See id.* at 692-93 (guard who shot passive, unarmed inmate standing near a fight between other unarmed inmates was entitled to qualified immunity because a reasonable official standing where the guard was standing (i.e., in a tower 360 feet away from the disturbance) could perceive that both plaintiff and another inmate were threatening a third inmate with serious injury); *Compare Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).

Defendants claim they are entitled to qualified immunity on all of the plaintiff's alleged violations. The argument discounts unduly the nature of the factual dispute here. According to plaintiff's sworn statement, the officers attacked without provocation or legitimate purpose. Under plaintiff's version, there exists no "reasonable mistake" under which the officers could have reasonably believed in the necessity or legality of their conduct. *See Santos v. Gates*, 287

1  F.3d 846, 855 n12 (9th Cir. 2002) (declining to grant qualified immunity "because whether the
2  officers may be said to have made a 'reasonable mistake' of fact or law, may depend upon the
3  jury's resolution of the disputed facts and the inferences it draws therefrom"). *See also Hervey*
4  *v. Estes*, 65 F.3d 784, 791 (9th Cir. 995) (qualified immunity inappropriate in excessive force
5  cases because they raise issues of fact). If plaintiff's testimony is credited, there is no basis for
6  good faith immunity here.

7  In sum, evaluation of plaintiff's excessive force claims depends principally on credibility
8  determinations and the drawing of factual inferences from circumstantial evidence, both of
9  which are the traditional functions of the jury; hence, a question of material fact exists with
10 respect to the amount of force used by the officers. Additionally, "because questions of
11 reasonableness are not well-suited to precise legal determination," *Chew v. Gates*, 27 F.3d 1432,
12 1440 (9th Cir. 1994), the jury should be allowed to assess whether the force used by the officers
13 was excessive. Accordingly, the court recommends denial of defendants' assertion of qualified
14 immunity.

15 **IV.   Conclusion**

16 For the foregoing reasons, it is hereby RECOMMENDED that:

17 1. Defendant Molloy's September 28, 2006, motion for summary judgment be denied;

18 2. Defendant Castro's September 29, 2006, motion for summary judgement be denied;
19 and

20 3. Plaintiff be directed to file a pretrial statement within 30 days, and defendants be
21 given 15 days after such service to file and serve a pretrial statement.

22 These findings and recommendations are submitted to the United States District Judge
23 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
24 after being served with these findings and recommendations, any party may file written
25 objections with the court and serve a copy on all parties. Such a document should be captioned
26 "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: March 6, 2008.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

20